IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re:                                                      :   Chapter 11
                                                            :
                                                            :   Case No. 17-10229 (CSS)
THE WET SEAL, LLC, *et al.*,                                :
                                                            :   (Jointly Administered)
   Debtors.[1]                                              :
                                                            :   Hearing Date: October 4, 2017 at 10:00 a.m. (ET)
                                                            :   Objection Deadline: September 5, 2017 at 4:00 p.m. (ET)
------------------------------------------------------------x

**DEBTORS' SECOND MOTION FOR ENTRY OF AN ORDER, PURSUANT
TO SECTION 1121(d) OF THE BANKRUPTCY CODE, FURTHER EXTENDING THE
EXCLUSIVE PERIODS FOR THE FILING OF A CHAPTER 11 PLAN AND
THE SOLICITATION AND ACCEPTANCE THEREOF**

The Wet Seal, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this Motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), further extending the Exclusive Periods (as defined below) for the filing of a chapter 11 plan and soliciting acceptances thereof.  In support of this Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  The Wet Seal, LLC (2741); The Wet Seal Gift Card, LLC (3286); Mador Financing, LLC (1377).  The Debtors' mailing address is 6789 Quail Hill Parkway, PMB 733, Irvine, California 92603.

Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9006-2.

## BACKGROUND

**A.    General Background**

3. On February 2, 2017 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On February 14, 2017, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these chapter 11 cases (collectively, the "Chapter 11 Cases").

4. Additional factual background relating to the Debtors' business, capital structure, and the commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Judd P. Tirnauer in Support of Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 19] (the "First Day Declaration"), which is incorporated by reference herein.

5. As further explained in the First Day Declaration, the Debtors initiated these Chapter 11 Cases to implement an orderly wind down of their business and operations.

**B.      Background Regarding GOB Sale Process and Sale of Intellectual Property**

6.      On the Petition Date, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 10] (the "GOB Sale Motion").

7.      On March 3, 2017, the Court entered a final order [Docket No. 235] approving, among other things, the implementation of the store closing sales and related ecommerce sale initiatives described in the GOB Sale Motion, all of which concluded by or about the end of February 2017.  In conjunction therewith, the Debtors vacated their retail properties, rejected their underlying nonresidential real property leases, ceased substantially all operations, and terminated substantially all of their employees.

8.      While liquidating their physical inventory, the Debtors also marketed, and ultimately sold, their intellectual property assets.  In connection therewith, the Court entered that certain *Order, Pursuant to Sections 105 and 363 of the Bankruptcy Code, (I) Authorizing the Sale of Certain Intellectual Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Granting Related Relief* [Docket No. 234], and the sale approved thereby closed on or about March 8, 2017.

**B.      Background Regarding Cash Collateral**

9.      While the Debtors were pursuing the various value-maximizing liquidation efforts described above, they also negotiated, together with the Committee and Crystal Financial, LLC (the "Senior Agent"), the continued consensual use of cash collateral during the pendency of these Chapter 11 Cases.  As a result of those efforts, and upon the agreement reached with the

Committee and the Senior Agent, the Court entered that certain *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay* [Docket No. 251] (the "Final Cash Collateral Order") on March 8, 2017. Upon the terms set forth in the Final Cash Collateral Order, and the stipulation and amended budgets filed subsequently thereto, the Debtors continue to, among other things, wind down their operations and seek to recover on claims held by the estates. The consensual use of cash collateral was most recently extended through and including October 31, 2017, as set forth in that certain *Notice Regarding (A) Adequate Protection Payments Under Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay and (B) Amended Cash Collateral Budget* [Docket No. 463], filed on July 31, 2017. As of the filing hereof, the Senior Agent's prepetition claim has not been repaid in full.

**C.    Background Regarding Avoidance Actions**

10.    As discussed on the record at the hearing conducted on March 3, 2017 (the "March Hearing"), the Court-approved settlement reached between the Debtors, the Committee and the Senior Agent established a waterfall that will govern the distribution scheme for the proceeds of certain avoidance actions that have been—and will continue to be—pursued by the Debtors' estates. As set forth in the Cash Collateral Order, avoidance action proceeds will be distributed as follows: first, to the Senior agent, until such Senior Agent is repaid its prepetition claim in full; second, to fund the remainder of "stub rent" claims; third, to fund claims arising under section 503(b)(9) of the Bankruptcy Code (such claims, "Section 503(b)(9) Claims"); and

01:22273675.1

fourth, to fund any other administrative claims that have not been paid during the course of the Chapter 11 Cases.[2]

11. Promptly after the March Hearing, the Debtors filed the *Debtors' Application for an Order Authorizing the Retention and Employment of ASK LLP as Special Counsel to the Debtors* [Docket No. 267] and, on April 3, 2017, the Court entered that certain *Order Authorizing the Retention and Employment of ASK LLP as Special Counsel to the Debtors* [Docket No. 313], thereby authorizing ASK LLP ("ASK") to pursue certain avoidance actions (collectively, the "Avoidance Actions") on behalf of the Debtors' estates. ASK is currently engaged with various potential defendants regarding the estates' claims arising under chapter 5 of the Bankruptcy Code, and the Debtors expect that ASK will continue to diligently consider all available recourse against such parties in an effort to maximize value for the Debtors' estates and creditors. As of the date hereof, ASK has settled numerous claims held by the estates and is preparing to pursue litigation against other defendants, as appropriate, while also continuing to resolve matters on a consensual basis.

12. The outcome of the Avoidance Actions will determine whether the Debtors have sufficient assets to pursue a chapter 11 plan and/or make distributions to various creditors in connection therewith or otherwise, including with respect to "stub rent" claims and Section 503(b)(9) Claims.

**D.    The Debtors' Exclusive Periods**

13. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Plan Period."). 11 U.S.C. § 1121(b). Section 1121(c)(3)

---

[2] As of the date hereof, the Debtors are not aware of any valid administrative expense claims that are past due.

01:22273675.1

5

of the Bankruptcy Code provides that if a debtor has not filed a plan that has been accepted by each class of claims or interests that is impaired under the plan before 180 days after commencement of a chapter 11 case (the "Solicitation Period"), any party in interest may file a competing plan. 11 U.S.C. § 1121(c)(3).

14. The Debtors' Plan Period and Solicitation Period (together, the "Exclusive Periods") were initially set to expire on June 2, 2017, and August 1, 2017, respectively. Accordingly, the Debtors filed the *Debtors' Motion for Entry of an Order, Pursuant to Section 1121(d) of the Bankruptcy Code, Extending the Exclusive Periods for the Filing of a Chapter 11 Plan and the Solicitation and Acceptance Thereof* [Docket No. 393] (the "First Exclusivity Motion"), thereby seeking to extend the Plan Period and the Solicitation Period through and including August 31, 2017 and October 30, 2017, respectively. The Court approved the First Exclusivity Motion by order dated June 8, 2017. *See* Docket No. 408.

15. The Debtors now seek an additional extension of the Exclusive Periods so that, among other things, ASK may be afforded sufficient time to pursue the Avoidance Actions and recover maximum proceeds generated thereby, which will allow the Debtors to determine the scope of future distributions and, in connection therewith, the prospect for a viable chapter 11 plan (or plans). Once the Avoidance Actions have run their course and the Debtors have otherwise explored all viable ways to realize value from the estates' remaining assets, the Debtors will evaluate their administrative liabilities (if any) and determine the feasibility of a chapter 11 plan. The Debtors believe that it is appropriate to maintain the Exclusive Periods so as to reduce any administrative expenses that may be incurred in connection with any competing chapter 11 plan(s) that are filed before it can be accurately determined whether any chapter 11 plan can be confirmed and, if so, which Debtors have the ability to do so.

16. Prior to filing this Motion, the Debtors' undersigned counsel discussed the requested extension proposed herein with the Committee's counsel, and were advised that the Committee does not object to the relief requested hereby.

## RELIEF REQUESTED

17. By this Motion, the Debtors request, pursuant to section 1121(d)(1) of the Bankruptcy Code, entry of an order extending the periods within which only the Debtors may file a chapter 11 plan and solicit acceptances thereof by approximately ninety (90) days. Unless extended, the Debtors' Plan Period and Solicitation Period will expire on August 31, 2017, and October 30, 2017, respectively.[3] The Debtors hereby seek to extend the Plan Period and Solicitation Period through and including November 29, 2017, and January 29, 2018, respectively, without prejudice to the Debtors' right to seek further extensions of both periods, as may be appropriate under the circumstances. This is the Debtors' second request for an extension of the Exclusive Periods.

## BASIS FOR RELIEF REQUESTED

**A.    Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause"**

18. The Exclusive Periods are designed to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan, without disruption to the administration of the estate that may result from the filing of competing plans by non-debtor parties. To this end, where the Exclusive Periods prove to be an unrealistic timeframe for filing and soliciting acceptances of a meaningful chapter 11 plan that would garner support from parties in interest, section 1121(d) of the Bankruptcy Code allows the Court to extend such

---

[3]    By operation of Local Rule 9006-2, the Plan Period and Solicitation Period are automatically extended until such time as the Court has had an opportunity to consider and act upon the relief requested in this Motion.

01:22273675.1

Exclusive Periods for "cause."  11 U.S.C. § 1121(d).  Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. Rep. No. 95-595, at 231-32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing an unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

19. Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor a sufficient opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan with its creditors.  *See In re Newark Airport/Hotel Ltd. P'ship*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

20. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case.[4]  *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986).  In making the

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended section 1121(d) by prohibiting extensions of the Exclusive Periods beyond 18 and 20 months, respectively, of the date of the order for relief, there was no revision to the standards for obtaining interim extensions.  Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of the instant cases.

01:22273675.1

determination to affirm or deny a request to extend the Exclusive Periods for "cause," courts have considered a variety of factors, including the following:

> (i) The size and complexity of the debtor's case;
>
> (ii) The necessity of sufficient time to negotiate and prepare adequate information;
>
> (iii) The existence of good-faith progress towards reorganization;
>
> (iv) Whether the debtor is paying its debts as they become due;
>
> (v) Whether the debtor has made progress negotiating with creditors;
>
> (vi) The length of time a case has been pending;
>
> (vii) Whether the debtor is seeking an extension to pressure creditors; and
>
> (viii) Whether or not unresolved contingencies exist.

*In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (citations omitted); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (citing to most of the factors listed above in determining whether to extend the exclusive periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed cause to extend its exclusive period based upon certain of the above-quoted factors).

21.  As set forth herein, the facts and circumstances of these Chapter 11 Cases justify further extending the Exclusive Periods to provide the Debtors with an unimpeded opportunity to propose, and ultimately confirm, a viable chapter 11 plan (or plans).

**B.  Cause Exists for an Extension of the Exclusive Periods in These Chapter 11 Cases**

22.  Since the Petition Date, the Debtors have focused their efforts and resources on, among other things, ensuring a smooth transition into chapter 11, complying with the myriad reporting requirements imposed on a chapter 11 debtor, and working to liquidate their remaining inventory and monetize their intellectual property in an efficient, and value-maximizing manner. In the early months of these Chapter 11 Cases, the Debtors and their professionals devoted

01:22273675.1

significant time and resources to, among other things, (i) coordinating tasks associated with implementing the store closing sales and vacating their retail properties in a timely manner, thereby avoiding the incurrence of additional administrative expenses; (ii) resolving the Committee's objection to the proposed terms of the Debtors' cash collateral use, and implementing the negotiated resolution reached in connection therewith; (iii) preparing and filing their respective schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements"); (iv) negotiating (and amending) independent contractor agreements with a limited number of pivotal personnel; (v) designing, negotiating and obtaining Court approval for their key employee incentive plan and related key employee retention plan for non-insiders; (vi) retaining ASK to pursue the Avoidance Actions and conducting due diligence in pursuit thereof; and (vii) ensuring that the estates continue to be competently and efficiently managed during the pendency of these Chapter 11 Cases.

23.    Since the First Exclusivity Motion was approved, the Debtors have continued to, among other things, meet their reporting obligations and pursue potential estate assets as appropriate, notwithstanding that the Debtors no longer have any full-time employees and are administering these cases with a very lean staff. Moreover, the Debtors have secured authority to use cash collateral on a consensual basis through the end of October 2017, which the Debtors believe will allow ASK to pursue Avoidance Actions on a more realistic timeline.

24.    At the same time, the Debtors and their advisors have been dealing with administrative issues attendant to these Chapter 11 Cases, including, but not limited to, (i) responding to routine and numerous creditor inquiries; (ii) retaining various professionals; and (iii) preparing initial and subsequent monthly operating reports. These demands on the Debtors during the first six months of the Chapter 11 Cases have occupied significant time and resources,

and required substantial attention from the Debtors' respective retained professionals and limited remaining staff. Under these circumstances, the Debtors submit that the requested extensions are both appropriate and necessary to afford the Debtors with sufficient time to pursue the Avoidance Actions and, ultimately, adequately prepare a viable chapter 11 plan and related disclosure statement in the event that the proceeds generated thereby position the Debtors to do so.

      i.      **The Size, Complexity, and Duration of the Chapter 11 Cases**

25.      Since the Petition Date, the Debtors have directed substantially all of their energy and resources towards liquidating their physical inventory, pursuing value-maximizing sale initiatives, and limiting their administrative expense exposure, all while operating with an extremely limited staff. At this stage of the Chapter 11 Cases, the Debtors and their professionals, and most notably ASK, are focused on pursuing settlements with potential Avoidance Action defendants or, as warranted, commencing litigation against such parties. As previewed at the March Hearing, the prosecution of the Avoidance Actions will take time to unfold, and the available asset pool will remain uncertain until ASK has had a full opportunity to explore—and pursue—all available recourse against Avoidance Action defendants. Given this timeline, the Debtors believe that it is in the best interests of all parties to allow the Debtors sufficient additional time to determine the scope of the proceeds that will arise from the Avoidance Actions and to formulate a practical and effective chapter 11 plan after their litigation strategies have run their course. Accordingly, the Debtors submit that the complexity and relatively short duration of these Chapter 11 Cases warrant a further extension of the Exclusive Periods.

### ii. The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information

26. Since the Petition Date, the Debtors and their professionals have focused much of their time, energy, and resources on smoothly transitioning into chapter 11 and the pursuit of the liquidation initiatives. Working toward that goal, the Debtors prepared and prosecuted numerous motions for first and second day relief, and prepared and filed their Schedules and Statements and required operating reports. The Debtors and their professionals have focused most of their time and resources on the inventory sales and negotiating final terms which govern the Debtors' use of cash collateral, and the Debtors believe that it is reasonable to request additional time to negotiate and finalize a chapter 11 plan given ASK's unfolding litigation strategy in pursuit of the Avoidance Actions. Accordingly, the Debtors submit that a brief extension of time is appropriate under the circumstances.

### iii. Good Faith Progress Made in These Chapter 11 Cases

27. As detailed above, the Debtors have made significant and material progress in these Chapter 11 Cases. Most importantly, the Debtors worked closely with their professionals to implement the store closing sales and sell their intellectual property in a value-maximizing manner, successfully vacated their retail properties and corporate headquarters without incurring unnecessary administrative expenses, and rejected all unnecessary executory contracts in the early stages of these Chapter 11 Cases. In addition, the Debtors promptly retained ASK and expect that the Avoidance Actions will, ultimately, generate valuable proceeds for the estates. Accordingly, the Debtors submit that they have made good faith progress in these Chapter 11 Cases, which weighs in favor of further extending the Exclusive Periods.

### iv. The Debtors Are Paying Their Debts as They Come Due

28. As the Debtors continue to timely satisfy their undisputed post-petition obligations, the requested extension of the Exclusive Periods will not prejudice the legitimate interests of post-petition creditors, of which the Debtors believe there are very few (if any). As such, the Debtors submit that this factor weighs in favor of extending the Exclusive Periods.

### v. The Debtors Are Not Seeking an Extension to Pressure Creditors

29. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The Debtors have worked diligently since the Petition Date to maximize the value of their estates, and require the extension sought by this Motion to bring these Chapter 11 Cases to an orderly and efficient conclusion. The Debtors are not seeking an extension to pressure creditors or other parties-in-interest. Indeed, the Debtors regularly consult with the Senior Agent and the Committee's professionals regarding the Avoidance Actions and proposed strategy in connection therewith. As such, the Debtors are not seeking the relief requested herein to pressure creditors.

### vi. Termination of the Debtors' Exclusive Periods Would Adversely Impact these Chapter 11 Cases

30. Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize value and hinder progress made to date. In effect, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, any party-in-interest would be free to propose a chapter 11 plan for the Debtors. Such a ruling could foster a chaotic environment with no central focus and cause substantial harm to the Debtors' efforts to preserve and maximize the value of their estates.

31. Based on the foregoing, the Debtors respectfully submit that cause exists to extend the Debtors' Exclusive Periods, pursuant to section 1121(d) of the Bankruptcy Code.

01:22273675.1

Specifically, the Debtors request that the Plan Period and Solicitation Period be extended through and including November 29, 2017, and January 29, 2018, respectively, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods, as may be appropriate under the circumstances.

## **NOTICE**

32. The Debtors have provided notice of this Motion to (i) the U. S. Trustee; (ii) counsel to Crystal Financial, LLC; (iii) counsel to Mador Funding, LLC; (iv) counsel to the Committee; and (v) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, (i) extending the Plan Period through and including November 29, 2017, (ii) extending the Solicitation Period through and including January 29, 2018, and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  August 21, 2017
        Wilmington, Delaware

           */s/ Andrew L. Magaziner*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Jaime Luton Chapman (No. 4936)
Andrew L. Magaziner (No. 5426)
Travis G. Buchanan (No. 5595)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

01:22273675.1