**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

----------------------------------------------------------x
*In re:*
:
: Chapter 11
:
: Case No. 17-10229 (CSS)
THE WET SEAL, LLC, *et al.*,[1]
:
: Jointly Administered
    Debtors.
:
: **Hearing Date: March 21, 2019 at 3:00 p.m. (ET)**
: **Objection Deadline: March 13, 2019 at 4:00 p.m. (ET)**
----------------------------------------------------------x

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF CERTAIN ASSETS TO OAK POINT PARTNERS, LLC; AND (II) GRANTING RELATED RELIEF**

The Wet Seal, LLC and its affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") in the captioned chapter 11 cases (collectively, these "Chapter 11 Cases") hereby file this motion (this "Motion") seeking entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105 and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) approving the sale of certain of the Debtors' assets to Oak Point Partners, LLC ("Oak Point"); and (b) granting related relief. In support of this Motion, the Debtors respectfully represent as follows:

**OVERVIEW: CHAPTER 11 CASES AND REMNANT ASSETS**

1.  The Debtors commenced these Chapter 11 Cases to implement an orderly wind down of their business and operations. To date, Debtors have concluded store closing sales at their retail locations and clearance sales on their ecommerce site, and have sold their

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: The Wet Seal, LLC (2741); The Wet Seal Gift Card, LLC (3286); and Mador Financing, LLC (1377). The Debtors' mailing address is 6789 Quail Hill Parkway, PMB 733, Irvine, California 92603.

01:24205437.3

intellectual property and brand assets. Further, the Debtors and their advisors have devoted significant time and resources over the last two years to, among other things, liquidating the Debtors' remaining assets, monetizing claims and causes of actions held against third parties, and winding down the Debtors' estates in a streamlined and efficient manner, while minimizing the incurrence of administrative expense claims.

2. Recently, the Debtors, in consultation with their advisors and Crystal Financial, LLC ("Crystal"), agent for the Debtors' senior lenders, determined that it was in the estates' best interest to request the dismissal of these Chapter 11 Cases, which the Debtors intend to do in the near term.

3. With potential dismissal looming, the Debtors have conferred with Crystal—which is currently owed over $500,000—and determined that it is in the estates' best interest to monetize certain remnant assets, to the extent any exist, so as to ensure that all value is derived from the Debtors' estates prior to dissolution of each Debtor entity. While the Debtors are not aware of any specific remaining estate assets, there may exist property of the Debtors' estates, consisting of known or unknown assets, claims, or property rights, which have not been previously sold, assigned, or transferred (collectively, "Remnant Assets").

4. Accordingly, after further diligence and discussions between the Debtors, Oak Point and Crystal, the parties memorialized their agreement on the terms set forth in the Asset Purchase Agreement (the "Purchase Agreement") attached as Exhibit B hereto.

5. The Purchase Agreement generally provides that Oak Point shall pay $20,000.00 (the "Purchase Price") in consideration of the Remnant Assets, whether or not such assets exist. Oak Point has further agreed to pay Crystal an equal share of any amounts

recovered, upon disposition of the Remnant Assets, over and above $47,500, on the terms set forth in the Purchase Agreement.[2]

6. In accordance with the Purchase Agreement, the Remnant Assets expressly exclude: (a) cash held at the time of the Agreement was executed in bank accounts, or to be funded by Crystal into bank accounts, and earmarked for: (i) distribution to creditors (including Crystal); (ii) payment of fees incurred by estate professionals; and (iii) costs incurred in connection with winding down the Debtors' affairs and dissolving the Debtors' corporate entities, as applicable; (b) pending and future preference or avoidance claims of the Debtors under sections 547 and 549 of the Bankruptcy Code, and all proceeds related thereto, including those actions which were waived earlier in the Chapter 11 Cases; (c) the pursuit of potential claims, actions, or recoveries from: (i) all current and former officers and directors of Debtors or Authorized Persons (as designated or appointed in appropriate written consents), and (ii) all other current and former professionals of the Debtors; (d) the anticipated net settlement funds of approximately $19,224.18 arising from Debtors' class action claim(s) in Freight Forwarders, Case No. 08-cv-00042 (E.D.N.Y.); and (e) the Purchase Price.

7. In their business judgment, and upon consultation with Crystal, the Debtors believe that the Purchase Price represents a fair and reasonable purchase price for the Remnant Assets, and represents the highest, best and, indeed, only offer therefor.

8. Accordingly, the Debtors seek authority to sell the Remnant Assets pursuant to the Purchase Agreement.

---

[2] As of the date hereof, Crystal is presently owed approximately $500,000 under the Senior Loan Documents.

01:24205437.3

3

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to Rule 9013-l(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

11. The statutory bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

**BACKGROUND**

**A.    General Background**

12. On February 2, 2017 (the "Petition Date"), the Debtors commenced voluntary cases under the Bankruptcy Code. The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On February 14, 2017, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 103]. These Chapter 11

01:24205437.3

Cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).

## RELIEF REQUESTED

14. By this Motion, the Debtors request entry of an order (a) authorizing the Debtors to sell the Remnant Assets free and clear of all liens, claims, interests, and encumbrances; and (b) approving the terms of the Purchase Agreement.

15. The Debtors seek to sell the Remnant Assets by private sale rather than a public sale. Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or public auction." Fed. R. Bankr. P. 6004(f)(1). Here, the Remnant Assets are *de minimis* in value and not the type of assets that are easily marketed because they are unknown in nature. Furthermore, at this juncture in these cases—with potential dismissal of these Chapter 11 Cases on the immediate horizon—the costs associated with further marketing and selling the Remnant Assets at public auction far outweigh the potential benefit to be derived therefrom. Indeed, Oak Point is the only party that has approached the Debtors regarding the purchase of the Remnant Assets, and given the minimal resources at the Debtors' disposal as the conclusion of these cases approaches, the Debtors determined that it was in their best interests to negotiate directly with Oak Point (with Crystal's input) and not further subject the Remnant Assets to additional marketing. The Purchase Agreement reflects the arm's length negotiation between the Debtors, Crystal and Oak Point, and the Debtors believe that the Purchase Price is fair and reasonable under the circumstances.

## BASIS FOR RELIEF REQUESTED

A. **The Proposed Sale of the Remnant Assets is an Appropriate Exercise of the Debtors' Sound Business Judgment**

16.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the Estates." 11 U.S.C. § 363(b)(1). Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

17.  To approve the use, sale or lease of property outside the ordinary course of business, the Court must find that such sale is supported by the sound business judgment of the Debtors. *See In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbott's Dairies of Pa., Inc.*, 788 F. 2d 143 (3d Cir. 1986 ) (requiring good faith purchasing); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 391 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that transactions should be approved under section 363(b)(1) when: (a) they are supported by the sound business judgment of a debtor's management; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the purchaser is acting in good faith); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); and *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

18.  A showing of sound business judgment, in turn, need not be unduly exhaustive; instead the debtor is "simply required to justify the proposed disposition with sound

01:24205437.3

business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See Lionel*, 722 F.2d at 1071. Bankruptcy courts are given substantial discretion in deciding whether to authorize a sale of a Debtors' assets outside of the ordinary course of business. *See In re Chateaugay Corp.*, 973 F.2d 141, 144 (2d Cir. 1992).

19. The Debtors submit that the sale of the Remnant Assets pursuant to the Purchase Agreement represents a prudent and proper exercise of business judgment, and is in the best interest of the Debtors' estates and creditors. Specifically, the Purchase Agreement was negotiated at arm's length and in good faith, and the Debtors believe that the Purchase Price is reasonable and represents fair value for assets that, ultimately, may or may not exist. Moreover, a private sale is appropriate because any costs associated with an extended marketing process and subsequent auction for the Remnant Assets would likely exceed the Purchase Price and, in turn, undermine and completely defeat any benefit to the Debtors' estates and creditors.

20. Moreover, based on the foregoing, the Debtors submit that Oak Point should be deemed a good faith purchaser. Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit, when construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." *In re Abbott's Dairies of Pa., Inc.*, 788 F.2d at 147; *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); and *In re Vanguard Oil & Serv. Co.*, 88 B.R. 576, 580 (E.D.N.Y. 1988).

21. Additionally, section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of all interests which may be asserted against such assets, with any such

01:24205437.3

interests attaching to the net proceeds of the sale, if subject to the rights and defenses of a debtor with respect thereto:

    a.    Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    b.    Such entity consents;

    c.    Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    d.    Such interest is in bona fide dispute; or

    e.    Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). As section 363(f) of the Bankruptcy Code is stated in the disjunctive, when proceeding pursuant thereto, it is only necessary to meet one of the five conditions thereof. To the extent that there are interests that may be asserted in the Remnant Assets, the Debtors believe that one or more of the aforementioned conditions have been satisfied.

    22.    As set forth herein, the Debtors submit that the sale of the Remnant Assets is a prudent exercise of their business judgment under the circumstances, and is in the best interest of the Debtors' estates and their creditors. Indeed, the Debtors are not aware of any future assets or claims that may be liquidated, obtained or otherwise administered, and absent the sale to Oak Point, the Debtors' estates and creditors would not realize any benefits on account of the Remnant Assets. Finally, as set forth above, the Debtors, upon consultation with Crystal, believe that the Purchase Price is reasonable and, indeed, has been negotiated at arm's length. Therefore, the Debtors respectfully request that the Court grant the relief requested herein.

**B.    Waiver of Stay of Order**

    23.    Pursuant to Bankruptcy Rule 6004(h), an order authorizing the sale of property is stayed for fourteen (14) days after the entry of the order unless the Court orders

otherwise. Given the anticipated dismissal of the Chapter 11 Cases in the near term, the Debtors request that the Court order that such stay not apply with respect to the sale of the Remnant Assets.

## NOTICE

24. Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel to Crystal; (c) counsel to the Committee; (d) Oak Point; and (e) all parties requesting notice in these Chapter 11 Cases pursuant to Local Rule 2002-1(b). The Debtors submit that, under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Proposed Order approving the sale of Remnant Assets to Oak Point, free and clear of liens, claims, and encumbrances, and grating such other and further relief as is just and proper.

Dated: February 27, 2019  YOUNG CONAWAY STARGATT & TAYLOR, LLP
Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Andrew L. Magaziner (No. 5426)
Travis G. Buchanan (No. 5595)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Debtors and Debtors in Possession*

01:24205437.3