## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x

In re:

THE WET SEAL, LLC, *et al.*,

    Debtors.[1]

----------------------------------------------------------x

: Chapter 11
:
: Case No. 17-10229 (CSS)
:
: (Jointly Administered)
:
: **Hearing Date:  March 21, 2019 at 3:00 p.m. (ET)**
: **Objection Deadline: March 13, 2019 at 4:00 p.m. (ET)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES;
## (II) ESTABLISHING PROCEDURES WITH RESPECT TO FINAL
## FEE APPLICATIONS; AND (III) GRANTING RELATED RELIEF

By this motion (the "<u>Motion</u>"), the debtors and debtors in possession (collectively, the

"<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") seek

entry of orders, substantially in the form attached hereto as **Exhibit A** and **Exhibit B** (the "<u>Initial

Order</u>," and the "<u>Dismissal Order</u>," respectfully), pursuant to sections 105(a), 305, 349,

363(b)(1), 507(a), 554(a), 726, and 1112(b) of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), Rules 1017, 2002, 3003, and 6007 of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 1017-2 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local

Rules</u>"): (a) dismissing the Chapter 11 Cases; and (b) granting related relief, including, without

limitation: (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of

the books and records maintained by the Debtors that were not sold pursuant to the sale

initiatives described herein; (ii) approving procedures for the filing and approval of final fee

applications and providing for payment of approved fees incurred in connection  dissolving each

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows:  The Wet Seal, LLC (2741); The Wet Seal Gift Card, LLC (3286); Mador Financing, LLC (1377).  The Debtors' mailing address is 6789 Quail Hill Parkway, PMB 733, Irvine, California 92603.

Debtor entity post-dismissal; and (iii) authorizing the Debtors to be dissolved on the terms

provided for in the Dismissal Order, in accordance with applicable state law.  In support of the

Motion, the Debtors respectfully represent as follows:

### PRELIMINARY STATEMENT[2]

1.      The Avoidance Actions and other disposition efforts undertaken by the Debtors to

maximize the value of their estates have all concluded, and the Senior Agent has exhausted its

means to recoveries authorized under the Court's Final Cash Collateral Order.  The Debtors have

no remaining assets to administer or monetize for the benefit of the estates' creditors and,

notwithstanding the collection efforts undertaken over the last two years, the Senior Lenders (as

defined in the Final Cash Collateral Order) will be owed at least $500,000 on account of their

prepetition claim by the time this Motion is considered by the Court.  Because there is no

reasonable prospect of distributions to other creditors, and the Debtors do not and will not have

available funds to satisfy any unsecured claims in these cases, the Debtors seek dismissal of the

Chapter 11 Cases pursuant to the Initial Order and Dismissal Order, respectively.

2.      In seeking approval of the Initial Order and the Dismissal Order, the Debtors are

cognizant of the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973

(2017) and the propriety of "structured" dismissals.  The Debtors do not seek to make any

distributions pursuant to this Motion, and believe the dismissal process proposed herein does not

run afoul of *Jevic* given that the Debtors do not have any funds available for distribution after

only being able to partially pay down the Senior Lenders' claim with proceeds of the Avoidance

Actions and other liquidation efforts.  For these reasons, the Debtors, with the support of the

---

[2]      All capitalized terms used but not defined in the Preliminary Statement shall have the meanings given to such terms in the Motion.

Committee and the Senior Agent, submit that dismissal—rather than conversion—is in the best interest of the estates.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief requested herein are pursuant to sections 105(a), 305, 349, 363(b)(1), 507(a), 554(a), 726, and 1112(b) of the Bankruptcy Code, Bankruptcy Rules 1017, 2002, 3003, and 6007, and Local Rule 1017-2.

## BACKGROUND

### A.      General Background

5.      On February 2, 2017 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On February 14, 2017, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").

6.      Additional factual background relating to the Debtors' business, capital structure, and the commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Judd P. Tirnauer in Support of Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 19], which is incorporated herein by reference.

**B.** **Background Regarding GOB Sale Process and Sale of Intellectual Property**

7.      On the Petition Date, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [Docket No. 10] (the "GOB Sale Motion").

8.      On March 3, 2017, the Court entered a final order [Docket No. 235] (the "GOB Sale Order") approving, among other things, the implementation of the store closing sales and related ecommerce sale initiatives described in the GOB Sale Motion, all of which concluded by or about the end of February 2017.  In conjunction therewith, the Debtors vacated their retail properties, rejected their underlying nonresidential real property leases, ceased substantially all operations, and terminated substantially all of their employees.

9.      While liquidating their physical inventory, the Debtors also marketed, and ultimately sold, their intellectual property assets.  In connection therewith, the Court entered that certain *Order, Pursuant to Sections 105 and 363 of the Bankruptcy Code, (I) Authorizing the Sale of Certain Intellectual Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests, and (II) Granting Related Relief* [Docket No. 234] (the "IP Sale Order"), and the sale approved thereby closed on or about March 8, 2017.

**C.** **Background Regarding Cash Collateral**

10.      While the Debtors were pursuing the various value-maximizing liquidation efforts described above, they also negotiated, together with the Committee and Crystal Financial, LLC (the "Senior Agent"), the continued consensual use of cash collateral during the pendency of these Chapter 11 Cases.  As a result of those efforts, and upon the agreement reached with the

Committee and the Senior Agent, the Court entered that certain *Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay* [Docket No. 251] (the "Final Cash Collateral Order") on March 8, 2017. Consistent with the terms set forth in the Final Cash Collateral Order, and in compliance with the various stipulations and amended budgets filed subsequently thereto, the Debtors have continued to, among other things, wind down their operations and seek to recover on claims held by the estates.  The consensual use of cash collateral was most recently extended through and including March 2, 2019, as set forth in that certain *Notice Regarding (A) Adequate Protection Payments Under Final Order (I) Authorizing Postpetition Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Modifying the Automatic Stay and (B) Amended Cash Collateral Budget* [Docket No. 960], filed on February 1, 2019.  As noted above, the Senior Lenders' prepetition claim remains unsatisfied.

11.     Finally, with the Senior Agent's consent, the Debtors will establish a Professional Fee Escrow (defined below), in the amount of $50,000, which shall be used to fund the payment of (i) approved final fees incurred by estate professionals (such fees, the "Professional Fees"), to the extent unpaid, (ii) fees owed to the Debtors' sole remaining Authorized Person (if any), (iii) fees which will be owed to the U.S. Trustee prior to dismissal of these Chapter 11 Cases, and (iv) any related fees or expenses incurred post-dismissal in the event the relief requested here is granted as proposed.

**D.     Background Regarding Avoidance Actions**

12.     As discussed on the record at the hearing conducted on March 3, 2017, the Court-approved settlement reached between the Debtors, the Committee, and the Senior Agent

established a waterfall that has governed the distribution scheme for the proceeds of certain

avoidance actions pursued by the Debtors' estates during these Chapter 11 Cases.

13.     On April 3, 2017, the Court entered that certain *Order Authorizing the Retention*

*and Employment of ASK LLP as Special Counsel to the Debtors* [Docket No. 313], thereby

authorizing ASK LLP ("ASK") to pursue certain avoidance actions (collectively, the "Avoidance

Actions") on behalf of the Debtors' estates.  Throughout its retention, ASK engaged with various

potential defendants regarding the estates' claims arising under chapter 5 of the Bankruptcy

Code and diligently considered all available recourse against such parties in an effort to

maximize value for the Debtors' estates and creditors.  As of the date hereof, ASK has settled

numerous claims held by the estates, including a number that were significant in amount, and

most recently filed a motion seeking approval, on the estates' behalf, of the final Avoidance

Action that holds meaningful value.[3]  In sum, ASK filed approximately 68 complaints against

preference defendants, successfully settled numerous Avoidance Actions with Court authority,

and has generated $981,715.56 in proceeds for the Debtors' estates (taking into account ASK's

fees and those of its local counsel) (the "Avoidance Proceeds") as of the date hereof.  In addition,

the Debtors and ASK expect the Avoidance Proceeds to be further augmented by proceeds

generated by the NFI Settlement, once approved.  The Avoidance Proceeds have been (and will

be) distributed in accordance with the waterfall set forth in paragraph 36 of the Final Cash

Collateral Order.  Because the Senior Obligations (as defined in the Final Cash Collateral Order)

have not been indefeasibly repaid in full, Avoidance Proceeds have not been distributed to any

other creditors contemplated by the waterfall set forth in the Final Cash Collateral Order,

---

[3]      This final motion, seeking authority to settle an Avoidance Action pursuant to Bankruptcy Rule 9019, is scheduled to be heard at the March 21, 2019 hearing (the subject settlement, the "NFI Settlement").  *See* Docket No. 973.

including, *inter alia,* creditors holding residual "stub rent" claims or claims arising under section 503(b)(9) of the Bankruptcy Code.

**E.      Additional Recovery Efforts**

14.      On October 27, 2017, the Court entered that certain *Order Authorizing the Debtors to Retain and Employ Ernst & Young LLP as Tax Advisory Services Provider* Nunc Pro Tunc *to September 20, 2017* [Docket No. 611], pursuant to which Ernst & Young LLP ("EY LLP") was retained by the Debtors to pursue employment tax refunds from various taxing authorities on behalf of the estates.  The Debtors, with EY LLP's assistance, sought to recover significant proceeds through the preparation and pursuit of applicable refunds and, as a result of EY LLP's efforts, the Debtors realized valuable returns.  After satisfying any and all obligations to EY LLP, consistent with the terms of the applicable cash collateral budget, any proceeds obtained by EY LLP on behalf of the Debtors' estates were used to further pay down the Senior Lenders' prepetition claim.

15.      The Debtors also obtained entry of that certain *Order Approving and Authorizing Stipulation Regarding Application of Reserve* [Docket No. 786], pursuant to which the Debtors realized approximately $133,000 in proceeds for the benefit of the their estates and creditors.

16.      Finally, on February 27, 2019, the Debtors filed a motion seeking entry of an order authorizing the Debtors to sell certain remnant assets to Oak Point Partners, LLC, for $20,000 (the "Oak Point Sale Motion").  The Oak Point Sale Motion is scheduled to be heard at the March 21, 2019 hearing at which the Debtors will seek approval of this Motion.

**F.      Claims Bar Date**

17.      Given the uncertainty regarding potential recovery for unsecured creditors following entry of the Final Cash Collateral Order, the Debtors determined that it was not in the

estates' best interest to establish a bar date for general unsecured claims or administrative

expense claims (and thereby incur significant costs in pursuit thereof) until there was more

clarity regarding value generated by the Avoidance Actions.  However, to the extent creditors

believed that they had postpetition administrative expense claims and contacted the Debtors'

undersigned counsel or the Debtors' representatives directly, the Debtors endeavored to reconcile

such asserted claims and satisfy undisputed postpetition administrative expense claims in the

ordinary course.  The Debtors are not aware of any pending asserted administrative expense

claims against the estates, and no motions have been filed in the Chapter 11 Cases seeking

payment of asserted administrative expense claims since March 2017, approximately two years

ago.

**G.      Debtors' Books and Records**

18.      On the Petition Date, the Debtors maintained voluminous books and records,

including, without limitation: (a) accounting documents (including, without limitation, financial

reports, income and other tax returns and other related documents); (b) bank documents

(including, without limitation, bank statements and copies of cancelled checks); (c) corporate

governance documents; (d) documents related to contracts, leases and other contractual

agreements of the Debtors; (e) insurance documents; (f) human resources and other related

employment documents; and (g) documents related to the Chapter 11 Cases.  The Debtors submit

that continued maintenance of any books and records (collectively, the "Books and Records"), to

the extent still in the Debtors' possession, may be a significant cost and burden to the Debtors'

estates, and the destruction or abandonment of such Books and Records is necessary for the

resolution of the Chapter 11 Cases, and would not be prejudicial to the Debtors' stakeholders

given the dormant state of these cases for nearly two years and the need to dissolve the Debtors'

corporate entities post-dismissal.

**G.      Other Administrative Matters**

19.      On April 4, 2017, the Court entered that certain *Order Establishing Procedures*

*for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. 326]

(the "Interim Compensation Order"), pursuant to which the Court approved procedures

governing applications for and payments of fees and expenses requested by Professionals.

20.      In addition, the Debtors have also worked to prepare for the orderly wind-down of

the Chapter 11 Cases.  For instance, the Debtors have sought, and obtained, numerous orders

authorizing the rejection of leases and contracts that the Debtors determined serve no benefit to

the estates and are not needed for the wind down of the Debtors' affairs.  To the extent that there

any additional contracts that have not been rejected as of the date upon which the Initial Order is

entered, the Debtors request that the Initial Order authorize the rejection of all remaining

executory contracts and leases, if any, as of the entry of such order.

**RELIEF REQUESTED**

21.      By this Motion, the Debtors request entry of the Initial Order, immediately, and

the Dismissal Order upon filing of a certification of counsel (the "Certification"), collectively

(a) dismissing the Chapter 11 Cases, and (b) granting related relief, including, without limitation:

(i) authorizing, but not directing, the Debtors to abandon and destroy all remaining Books and

Records; (ii) approving procedures for the filing and approval of Final Fee Applications (as

defined below), providing for payment of approved Professional Fees from the Professional Fee

Escrow, and allowing the Debtors to utilize the Professional Fee Escrow to satisfy fees incurred

and costs expended in connection with dissolving the Debtors' corporate entities and destroying

Books and Records, as applicable; and (iii) authorizing the Debtors to be dissolved, in

accordance with applicable state law, on the terms provided for in the Initial Order and Dismissal

Order, respectively.

## BASIS FOR RELIEF REQUESTED

**A.    The Court Must Dismiss These Cases if the Elements for "Cause" Are Shown Under Section 1112(b)(4) of the Bankruptcy Code.**

23.    Pursuant to section 1112(b)(1) of the Bankruptcy Code, absent unusual

circumstances, a court shall dismiss a bankruptcy case "for cause."  Section 1112(b)(1) states, in

pertinent part, that:

> on request of a party in interest, and after notice and a hearing, the court shall
> convert a case under this chapter to a case under chapter 7 or dismiss a case under
> this chapter, whichever is in the best interests of creditors and the estate, for cause
> . . . .

11 U.S.C. § 1112(b)(1).  The Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA") changed the statutory language with respect to conversion and dismissal from

permissive to mandatory.[4]  *See* H.R. Rep. No. 109-31(I), at 442, *reprinted in* 2005 U.S.C.C.A.N.

88, 94 (stating that the Act "mandate[s] that the court convert or dismiss a chapter 11 case,

whichever is in the best interests of creditors and the estate, if the movant establishes cause,

absent unusual circumstances."); *see also Nester v. Gateway Access Solutions, Inc. (In re*

*Gateway Access Solutions, Inc.)*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the

amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter

11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr.

---

[4]    Prior to BAPCPA, a bankruptcy court had wide discretion to use its equitable powers to dispose of a debtor's case but was not mandated to dismiss a case if cause were shown.  H.R. Rep. No. 95-595, at 405 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; *see also Small Bus. Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (stating that determination of whether cause exists under § 1112(b) "rests in the sound discretion" of the bankruptcy court); *Koerner v. Colonial Bank (In re Koerner)*, 800 F.2d 1358, 1367 & n.7 (5th Cir. 1986) (stating that bankruptcy court is afforded "wide discretion" under section 1112(b)).

D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal, such that this Court has no choice, and no discretion, in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).").

24.    The amendments to section 1112 thus limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D.S.C. 2007).

25.    For reasons more fully explained below, the Debtors submit that the Court should dismiss the Chapter 11 Cases because cause exists and dismissal is in the best interests of the Debtors, their estates and creditors.

**B.    Cause Exists to Dismiss the Debtors' Bankruptcy Cases Because the Debtors Ceased Their Business Operations and Have Insufficient Assets to Confirm a Plan.**

26.    Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 grounds for dismissal.  11 U.S.C. § 1112(b)(4)(A)–(P); *see also In re Gateway Access Solutions*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'" (quoting *First Jersey Nat'l Bank v. Brown (In re Brown)*, 951 F.2d 564, 572 (3d Cir. 1991))); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not." (citation omitted)); *accord Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1102

(10th Cir. 1991) (stating that section 1112(b)'s list is non-exhaustive).[5]  One such ground is

where a party in interest shows that there is a "substantial or continuing loss to or diminution of

the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C.

§ 1112(b)(4)(A).

27.     To demonstrate a continuing loss to or diminution of the estate and absence of a

reasonable likelihood of rehabilitation, a debtor must establish (a) that there has been a

diminution of value of the estate and (b) the debtor does not have a "reasonable likelihood of

rehabilitation."  *See, e.g., In re Citi-Toledo Partner*s, 170 B.R. 602, 606 (Bankr. N.D. Ohio

1994) ("Section 1112(b)(1) contemplates a 'two-fold' inquiry into whether there has been a

'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation'"

(citing *In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985))).

28.     Under the two-fold inquiry, the Debtors must first demonstrate that there has been

a diminution of value of their estates.  *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606

(finding that accumulation of real-estate taxes impaired the value of the estate).  Second, the

Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation."  *See, e.g.,*

*Clarkson v. Cooke Sales & Serv. Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (stating

that dismissal warranted where "the absence of financial data and certain sources of income for

the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation"); *A. Illum*

*Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146, 151 (2nd

Cir. 1984) (stating that conversion under section 1112(b)(1), (2) and (3) was warranted in light of

---

[5]      In *In re TCR of Denver*, the court recognized the apparent typographical error in § 1112(b)(4) of the
Bankruptcy Code.  The sixteen illustrative examples of "cause" set forth in that section are linked by the word "and"
after subsection (O).  Accordingly, strict construction of the statute would require that a debtor establish all of the
items constituting "cause" before a case can be dismissed by the court.  The *TCR* court held that Congress could not
have intended to require a "perfect storm" of all sixteen circumstances listed before a case can be converted or
dismissed.  *See In re TCR of Denver*, 338 B.R. at 498.

debtors' "failure . . . to demonstrate that their prospects for prompt rehabilitation were based

upon anything more substantial than [their] boundless confidence" in the 15 months after the

filing of a chapter 11 petition); *see also In re Wright Air Lines, Inc.*, 51 B.R. 96, 100 (Bankr.

N.D. Ohio 1985) (stating that "[r]ehabilitation as used in 11 U.S.C. Section 1112(b)(1) means 'to

put back in good condition; re-establish on a firm, sound basis'" (citation omitted)).

29.    The Debtors satisfy the two-fold inquiry.  First, the Debtors liquidated

substantially all of their assets in connection with the GOB Sale and the sale of the Debtors'

intellectual property, both of which occurred nearly two years ago.  The Debtors no longer

conduct any business and do not have any assets available for distribution after partially paying

down the Senior Agent.  Although the Debtors are not aware of any pending administrative

claims and expenses beyond the U.S. Trustee's fees and Professional Fees, those expenses

continue to potentially accrue each day the Chapter 11 Cases remain open, depleting the

Debtors' estates.  Second, there is no business to reorganize.  Pursuant to the GOB Sale Order

and the IP Sale Order, the Debtors have transferred all of their operating assets and ceased

operating almost two years ago.

30.    "[D]ismissal of a chapter . . . 11 case is appropriate where the court finds . . . that

a feasible plan is not possible."  *In re 3 Ram*, 343 B.R. at 117–18.  "If [a] chapter 11 [debtor]

cannot achieve . . . reorganization within the statutory requirements of the Bankruptcy Code,

then there is no point in expending estate assets on administrative expenses . . . ."  *Id.* at 118

(citations omitted).

31.    The Debtors cannot confirm a plan of liquidation because they do not have

sufficient assets to make any distributions, let alone pay all priority claims in full, as required by

section 1129(a)(9) of the Bankruptcy Code.  Thus, the Debtors submit that there is no point in

incurring additional administrative expenses when the Debtors are unable to consummate a liquidating plan.

32.    The Debtors have met their burden.  The Chapter 11 Cases should be dismissed under section 1112(b)(4) of the Bankruptcy Code due to the continuing diminution in value of the Debtors' estates, the absence of a reasonable likelihood of rehabilitation, and the fact that a liquidating plan is not feasible under these circumstances.

**C.    Dismissal Is in the Best Interests of the Debtors' Creditors and the Debtors' Estates.**

33.    Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must evaluate whether dismissal is in the best interests of the debtor's creditors and of the estate.  *See, e.g., Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").  A variety of factors demonstrate that it is in the best interest of the Debtors' estates and their creditors to dismiss the Chapter 11 Cases.

34.    First, a dismissal of a chapter 11 bankruptcy case meets the best-interests-of-the-creditors test where a debtor has nothing to reorganize and the debtor's assets are fixed and liquidated.  *See Camden Ordinance Mfg. Co. of Ark., Inc. v. U.S. Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (stating that reorganization to salvage business that ceased business was unfeasible); *Royal Trust Bank, N.A. v. Brogdon Inv. Co. (In re Brogdon Inv. Co.)*, 22 B.R. 546, 549 (Bankr. N.D. Ga. 1982) (dismissing chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization).  The Debtors have nothing left to reorganize.  As of the date of this Motion, all

of the operating assets of the Debtors' estates have been sold, and insufficient funds are available to fund a plan of liquidation.

35.      Second, the best-interests-of-the-creditors test is also met where an interested party, other than the debtor, believes that dismissal is a proper disposition of the case.  *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996) (weighing factors more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7 where debtor and U.S. Trustee both favored dismissal).  Here, the Committee and the Senior Agent are supportive of the Debtors' decision to dismiss the Chapter 11 Cases rather than convert them.

36.      Third, the best-interests-of-the-creditors test is met where a debtor demonstrates the ability to oversee its own liquidation.  *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone,* 183 B.R. at 412 ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation . . . should a debtor be permitted to remain in bankruptcy . . . .").  Here, the Debtors conducted the sale of substantially all of their assets, which maximized the value of those assets and liquidated them in an orderly fashion.  To the extent valid administrative expense claims have been filed, such claims are junior to the Adequate Protection Superpriority Claim held by the Senior Agent, and all outstanding (and ultimately allowed) Professional Fees will be paid from the Professional Fee Escrow established in connection with the relief requested herein.  The Debtors believe that there is nothing further to pursue in the Chapter 11 Cases.

37.      Fourth, and finally, dismissal of the Chapter 11 Cases will maximize the value of the Debtors' estates because the alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is unnecessary and could impose significant additional administrative costs upon the Debtors' estates.  Under the circumstances, even in a chapter 7 liquidation, the

chapter 7 trustee would still have insufficient assets with which to pay claims that would accrue during the administration of the Debtors' cases under chapter 7.  By continuing in bankruptcy under chapter 7, the Debtors would only incur additional administrative expenses that would not serve to provide recoveries to any party in interest.

38.     Thus, in balancing the equities of the Debtors' cases, the Debtors submit that it is in the best interest of the Debtors' estates and their creditors to dismiss the Chapter 11 Cases.

**D.     Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) of the Bankruptcy Code.**

39.     In the alternative, cause exists to dismiss the Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code, which provides that:

> (a)     The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> > (1)     the interests of creditors and the debtor would be better served by such dismissal or suspension . . . .

11 U.S.C. § 305(a).

40.     Dismissal pursuant to section 305(a) is appropriate where the court finds that both creditors and the debtor would be better served by dismissal.  *In re AMC Investors, LLC*, 406 B.R. 478, 487–88 (Bankr. D. Del. 2009).  Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court.  *In re Sky Grp. Int'l, Inc.*, 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).  Many factors are considered when determining the best interests of creditors and the debtor, including (a) the economy and efficiency of administration, (b) whether federal proceedings are necessary to reach a just and equitable solution, (c) whether there is an alternative means of achieving an equitable distribution of assets, and (d) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case.  *AMC Investors*, 406 B.R. at 488.

41.     As described above, cause exists for dismissal.  The Debtors have sold

substantially all of their assets, there are no assets left to administer, and the Debtors are unable

to confirm a liquidating plan.  In that context, conversion to chapter 7 would impose additional

administrative costs with no corresponding benefit to the Debtors' creditors or their estates.

Dismissal of the Chapter 11 Cases, among other things, provides the most efficient and cost-

effective method of effectuating the wind-down of the Debtors' estates, and ensures payment of

all U.S. Trustee's fees.

**E.     The Court Should Authorize the Debtors to Abandon and Destroy Any Remaining
        Books and Records.**

42.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing,

[a debtor] may abandon any property of the estate that is burdensome to the estate or that is of

inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Additionally, section

105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of [the

Bankruptcy Code]."  *Id.* at § 105(a).  Bankruptcy Rule 6007, meanwhile, provides that a debtor

may abandon property of the estate by giving notice of the proposed abandonment to various

parties and allowing those parties to file an objection.  As one bankruptcy court has noted, "if a

trustee feels an asset is of inconsequential value and benefit to the estate *or* that it is 'burdensome

to the estate,' [she] may abandon it."  *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1004 (Bankr.

E.D. Mich. 1985).

43.     The Debtors request that the Court, pursuant to sections 105(a) and 554 of the

Bankruptcy Code and Bankruptcy Rule 6007, authorize, but not direct, the Debtors to abandon

and destroy any remaining Books and Records.  As previously discussed, the Debtors have sold

substantially all of their assets through the GOB Sale and the IP Sale, no longer have an

operating business, and have completely wound down their affairs. The Books and Records, which were maintained primarily to serve ASK in its pursuit of Avoidance Action recoveries, will be of no value to the Debtors after dismissal of the Chapter 11 Cases and the proposed dissolution, and, therefore, the costs associated with maintaining and storing the Books and Records—an asset with no value—are not warranted.

44.     The Debtors submit that the relief requested herein with respect to the Books and Records is necessary, prudent, and in the best interests of the Debtors' estates and creditors, and should therefore be granted.

**F.     Professional Fees**

45.     The Debtors request that the Court schedule a final omnibus fee hearing the "Final Fee Hearing") pursuant to the Initial Order. The Debtors further request that the Court require all Professionals retained in the Chapter 11 Cases which have not yet filed final fee applications to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "Final Fee Applications") not later than 14 days after entry of the Initial Order (the "Final Fee Filing Deadline"), and that any objections to the Final Fee Applications be filed and served on counsel for the Debtors by 4:00 p.m. (prevailing Eastern Time) on the date that is 15 days after the Final Fee Filing Deadline.

46.     With the Senior Agent's consent, the Debtors have established (or will establish) an escrow account (the "Professional Fee Escrow"), funded in the amount of $50,000, for the purpose of paying (a) outstanding Professional Fees incurred (but not yet paid) through the dismissal of the Chapter 11 Cases, (b) fees incurred and costs expended post-dismissal in connection dissolving the Debtors' corporate entities and destroying Books and Records, as applicable, (c) fees owed to the Debtors' sole remaining Authorized Person (if any), and (d) all

01:23793075.7

U.S. Trustee fees incurred through the date of dismissal.  The Debtors request authority to utilize the Professional Fee Escrow for these specific purposes, and to the extent that any funds remain in the Professional Fee Escrow after paying such post-dismissal fees and expenses, the Debtors will remit such funds to the Senior Agent.

**G.**     **All Prior Releases, Stipulations, Settlements, Rulings, Orders and Judgments Should Remain Binding and Should Continue To Have Full Force and Effect.**

47.     The dismissal of a chapter 11 case ordinarily vacates all orders previously entered by the bankruptcy court, and restores all parties to the prepetition status quo.  *See* 11 U.S.C. § 349(b).  A bankruptcy court may, however, "for cause, order[] otherwise . . . ."  *Id.*  Courts in this jurisdiction have regularly allowed orders, including those approving releases and settlements, to be given continued effect after a dismissal, notwithstanding section 349 of the Bankruptcy Code.  *See, e.g., In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW) (Bankr. D. Del. Feb. 1, 2019) [Docket No. 1436] (approving form of dismissal order giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Sunco Liquidation, Inc.*, No. 17-10561 (KG) (Bankr. D. Del. Nov. 6, 2017) [Docket No. 865] (giving continued effect to orders entered throughout the pendency of the chapter 11 cases); *In re Old Towing Co.*, Case No. 17-10249 (LSS) (Bankr. D. Del. May 30, 2017) [Docket No. 381] (giving continued effect to 363 sale order and any releases, injunctions and successor liability provisions provided for in such sale);  *In re TAH Windown, Inc.*, Case No. 16-11599 (MFW) (Bankr. D. Del. Jan. 13, 2017) [Docket No. 408] (giving orders, releases, and injunctions continuing effect); *In re City Sports, Inc.*, Case No. 15-12054 (KG) (Bankr. D. Del. Mar. 4, 2016) [Docket No. 647] (giving continued effect to previously entered orders, and approving broad releases); *In re Coach Am Grp. Holdings Corp.*, Case No. 12-10010 (KG) (Bankr. D. Del. May 31, 2013) [Docket No. 1568]

(same); *In re ICL Holding Co.*, Case No. 12-13319 (KG) (Bankr. D. Del. Sept. 10, 2014) [Docket No. 1367] (same).

48.      Given the circumstances of the Chapter 11 Cases, the Debtors submit that ample cause exists to allow all prior orders, releases, stipulations, settlements, rulings, and judgments entered by the Court during the Chapter 11 Cases to be given continued effect, notwithstanding the requested dismissal.

## H.      Certification and Request for Entry of Final Dismissal Order

49.      As soon as reasonably practicable following the filing of the Certification, the Debtors request that the Court dismiss the Chapter 11 Cases.  Among other things, the Certification will verify that: (i) all monthly operating reports have been filed; (ii) all quarterly fees of the U.S. Trustee have been paid in full; and (iii) the Professional Fee Escrow has been established and the Professional Fees incurred in the Chapter 11 Cases have been approved on a final basis and paid from such Professional Fee Escrow.  The Dismissal Order will dismiss the Chapter 11 Cases immediately upon entry.

50.      The Debtors intend to serve the Certification on (a) counsel to the Committee, (b) the U.S. Trustee, and (c) all entities that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"), but will not send the Certification to all of the Debtors' creditors, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on the present Motion.

## NOTICE

56.      A copy of this Motion and notice of the hearing thereon are being sent by first-class United States Mail to the Notice Parties.

01:23793075.7

57.    In addition, the Debtors are providing notice of the hearing on this Motion by first-class United States Mail to all of the Debtors' creditors, as provided in Bankruptcy Rule 2002(a)(4).  The notice of hearing includes specific information regarding how to obtain a copy of the Motion free of charge and the procedures for filing objections to the Motion.  The Debtors submit that under the circumstances no other or further notice is necessary.

58.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

### CONCLUSION

WHEREFORE the Debtors respectfully request entry of (i) the Initial Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein, (ii) the Dismissal Order, substantially in the form attached hereto as **Exhibit B**, after the Debtors' filing of the Certification, and (iii) such other and further relief as is just and proper.

Dated:    February 27, 2019
      Wilmington, Delaware

*/s/ Andrew L. Magaziner*
Robert S. Brady (No. 2847)
Michael R. Nestor (No. 3526)
Andrew L. Magaziner (No. 5426)
Travis G. Buchanan (No. 5595)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and*
*Debtors in Possession*

01:23793075.7